IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION


DERRICK MILLON,                          )
                                         )
                    Plaintiff,           )
                                         )
vs.                                      )          Case No. 11-0410-CV-W-ODS
                                         )
JPMORGAN CHASE BANK, NA.,                )
and DEUTSCHE BANK NATIONAL               )
TRUST COMPANY,                           )
                                         )
                    Defendants.          )


**ORDER AND OPINION GRANTING MOTION FOR SUMMARY JUDGMENT (DOC. 26)**

Defendants move for summary judgment. The motion is granted.


I. BACKGROUND


Plaintiff Derrick Millon resides in Pleasant Hill, Missouri. He financed the purchase of this residential property with a loan from Long Beach Mortgage Company.

In connection with the loan Millon executed a promissory note dated February 28, 2006, payable to Long Beach Mortgage in the amount of $318,400.00. To secure the repayment of the note Millon executed a deed of trust granting his residential property to Trustee Assured Quality Title Company, in trust, with power of sale. The deed of trust identifies Long Beach as the Lender references the note signed by Millon.

The deed of trust also states the Lender could appoint a Successor Trustee to Assured Quality Title. On December 31, 2008, an Appointment of Substitute Trustee was filed with the Cass County Recorder of Deeds. But it was not filed by Long Beach Mortgage; rather, it was filed by Defendant Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Trust 2006-3. In the document, Deutsche Bank referenced the note and deed of trust Millon signed, and Deutsche Bank stated it "[was] the owner and holder of such Note and Deed of Trust." Deutsche Bank also stated it

was removing Assured Quality Title as Trustee and appointing the law firm of Martin, Leigh, Laws & Fritzlen, P.C., as Successor Trustee.

On or about January 6, 2011, Martin, Leigh, Laws & Fritzlen sent Millon a Notice of Trustee's Sale. The notice stated Millon's residential property was going to be sold at 9:00 AM on February 7, 2011, "[f]or default" under the deed of trust, as modified by a Loan Modification Agreement Millon executed in 2009. The sale was to take place at the Cass County Courthouse in Harrisonville, Missouri.

Approximately 1 hour before his property was to be sold Millon filed this action at the Cass County Courthouse. Among other things, Millon seeks a declaration that neither Deutsche Bank nor JP Morgan Chase (Chase) are entitled to foreclose the deed of trust, and that Martin, Leigh, Laws & Fritzlen cannot act as Successor Trustee. Defendants removed the action to this Court and have moved for summary judgment.

## II. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court addresses six broad issues in disposing of Defendants' motion.

### (a) Justiciable Controversy

Defendants first argue they are entitled to summary judgment because Millon cannot demonstrate an actual, justiciable controversy; a requirement for declaratory judgment actions no less than others. *See Hickman v. State of Mo.*, 144 F.3d 1141, 1142 (8th Cir. 1998). Defendants maintain Millon is essentially asking the Court to "find an 'attempted wrongful foreclosure,'" a cause of action rejected in *Reese v. First Missouri Bank and Trust Co. of Creve Coeur*, 736 S.W.2d 371 (Mo. 1987). *Reese* observed that "Missouri has had a long and good experience with nonjudicial foreclosure of deeds of trusts (mortgages)" (footnote omitted) and that "authorizing a

2

cause of action for wrongful attempted foreclosure would effectively nullify the purposes for having the expeditious non-judicial foreclosure of deeds of trusts." *Id.* at 373.

Defendants' argument is not without some appeal. Declaratory judgment actions like this one essentially turn nonjudicial foreclosure into judicial foreclosure, exactly what *Reese* wanted to avoid.

Defendants do not however cite any on-point authority for their position, and the Court could find none. And "[p]ower of sale is a matter of contract between the parties . . . ." *Belote v. McLaughlin*, 673 S.W.2d 27, 31 (Mo. 1984) (citation omitted). Only parties with rights under a contract can enforce the contract. *See RGB2, Inc. v. Chestnut Plaza, Inc.*, 292 S.W.3d 409, 416 (Mo. Ct. App. 2009) ("'In order to state a cause of action on a contract, one must be a party to that contract from which the action arises'" (citations omitted).). Millon is essentially seeking a declaration that Defendants—which claim a right to foreclose—have no right to enforce the contract.

If Millon is wrong and the foreclosure sale proceeds, he will be divested of legal title to his residence. *See Belote*, 673 S.W.2d at 30–31 (noting lien created by deed of trust does not affect legal title "until the collateral security has been sold" (citation omitted).). The Court holds this case presents a justiciable controversy. *See Diagnostic Unit Inmate Council v. Films Inc.*, 88 F.3d 651, 653 (8th Cir. 1996) (defining generally "actual controversy" as "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment'" (citations omitted).).

### (b) Deutsche Bank

Defendants argue Deutsche Bank is the party entitled to foreclose on the deed of trust executed by Millon. In Missouri "[a] deed of trust securing a negotiable note passes with it . . . ." *Goetz v. Selsor*, 628 S.W.2d 404, 405 (Mo. Ct. App. 1982) (citation omitted). Thus "a party entitled to enforce a note is also entitled to enforce the deed of trust securing that note, regardless of whether that transfer is recorded." *In re Washington*, ___ B.R. ___, 2011 WL 6010247, at *5 (Bankr. W.D. Mo. Dec. 01, 2011).

3

Defendants offer several arguments for why they believe Deutsche Bank is entitled to enforce the note (and consequently the deed of trust). The Court has focused on the one argument it considers to have merit, which begins with an exhibit Defendants contend is "[a] color copy of the Note." This factual statement—that the exhibit is a color copy of the note—is supported by defense counsel's affidavit, which further states she received the original note on request and it is being held in her law firm's vault.

In his opposition to summary judgment Millon broadly denies Defendants' factual statements concerning the purported original note and color copy. Millon relies solely on his own affidavit to support his broad denial.

Considering first the authenticity of the color copy submitted to the Court, Millon has not shown a genuine issue of fact as to whether it accurately represents the document being held by defense counsel in her firm's vault. Millon states he examined what Defendants claims to be the original note at defense counsel's firm on March 28, 2012. His affidavit contains no statements even hinting that the exhibit submitted to the Court is not a color copy of the document he examined. The Court thus accepts the exhibit as a true and accurate color copy of that document.

Considering next the authenticity of that document as the original note, Millon again has failed to show that a genuine issue of fact exists. Millon notably makes no argument that the document he examined was *not* the note he signed; he just denies Defendants' statement of this fact. Millon admits however that he executed a promissory note in the amount of $318,400.00 in favor of Long Beach Mortgage on February 28, 2006, with a loan number of 6684995-7879. All of this information is reflected in the document being held by defense counsel (as represented by the color copy submitted to the Court).

Millon does not dispute that the document he examined at defense counsel's firm contains what appears to be his signature near the bottom of the last page. Also, Millon does not dispute that document met the requirements for a negotiable instrument under Mo. Ann. Stat. § 400.3-104(a) of Missouri's Uniform Commercial Code; indeed, he applies Missouri's law on negotiable instruments in arguing the purported endorsement

4

on that document (discussed later) was ineffective.

Because that document was a negotiable instrument, "the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings." § 400.3-308(a); *see also* Fed. R. Evid. 902(9) (stating commercial paper and signatures on it are self-authenticating to extent allowed by general commercial law). The Court acknowledges Millon may not have had a chance to "den[y] in the pleadings" the authenticity of that signature; nothing indicates Millon examined the document in preparing his petition for filing. But even now in his affidavit—after he has examined the document and when he has the opportunity to specifically deny the authenticity of that signature—he does not do so. The signature is thus deemed authentic and authorized. *See* § 400.3-308(a). The only reasonable conclusion is that the document being held by defense counsel containing all this information is the original note, and that is what the Court accepts it to be.

Deutsche Bank is a "'[p]erson entitled to enforce'" the note if Deutsche Bank is "the holder of the instrument." § 400.3-301(i). To be a "holder," a person must at least have possession of the instrument. *See* § 400.1-201(20). Defense counsel's possession of the note on Deutsche Bank's behalf satisfies this requirement.

But possession alone is only sufficient to make Deutsche Bank a holder of the note if the note is "payable to bearer" (bearer paper). § 400.1-201(20). When the note was originally issued by Millon (i.e., when Millon first delivered it to Long Beach Mortgage after signing it), it stated it was payable "to the order of the Lender." Those words made the note order paper, not bearer paper. *See* § 400.3-109(a)–(b).

Defendants contend the note became bearer paper, making Deutsche Bank's current possession dispositive of its right to enforce, when Long Beach Mortgage negotiated it. "Negotiation" occurs when an instrument is transferred by a person (other than the issuer) to another person who then becomes the holder. § 400.3-201(a). Order paper (like Millon's note when it was first issued to Long Beach) can become bearer paper through negotiation, but it requires a certain type of endorsement. *See* §§ 400.3-109(c), 400.3-201(b).

An "'[e]ndorsement'" generally is a signature made on an instrument for the

5

purpose of negotiating it. § 400.3-204(a). The type of endorsement required to transform order paper to bearer paper is a "'blank'" endorsement—one that does not identify the person to whom the instrument is to be paid. § 400.3-205(a)–(b).

On the back of the third and final page of the note (which is the fourth page of the color copy) appears a partially faded stamp, comprised of words (some illegible) and two illegible signatures. The signatures appear below the clearly legible words "Pay to the order of" and an empty blank, and underneath "Long B—— [ ]" and what seems to be the word "Company." The Court holds this is sufficient evidence of an endorsement in blank by Long Beach Mortgage.

Millon contends the note was *not* endorsed in blank by Long Beach. Millon asserts the document he examined consisted of three unattached pages not pinned together, with a stamp on the back of the last page that was not dated. Millon cites no authority requiring attached pages or a date, so the Court dismisses those alleged defects. Millon also complains the signatures on the stamp are not legible and "original," and there is no power of attorney provided.

Defendants counter Millon has no standing to complain about the adequacy of the endorsement. The principal case Defendants rely on is *Barker v. Danner*, 903 S.W.2d 950, 955 (Mo. Ct. App. 1995), which declared "[t]he validity of an assignment of a debt cannot be questioned by the debtor in a suit by the assignee unless he can show prejudice'" (citation omitted). But this of course is not a suit by the assignee of the instrument. And how can foreclosure by a stranger to the contract (as Millon claims would happen here) *not* be prejudicial to the homeowner—even one in default? For Defendants' argument to be persuasive, they would need to show how the homeowner would not be prejudiced if a stranger foreclosed on the property and then the proper party attempted to foreclose. Defendants have not done this, so their argument is unpersuasive.

This is not inconsistent with the Court's Order of dismissal in *Singleton v. Wells Fargo Home Mortgage*, No. 4:12-CV-00230-ODS (Doc. 12), cited by Defendants. In *Singleton* the plaintiff claimed the defendants were required to show him the promissory note before they could foreclose the deed of trust. Order, Doc. 12, p. 4. The Court held

6

the plaintiff failed to state a claim for relief because nothing in the deed of trust or Missouri's statutes required that *he* be shown the note before foreclosure could proceed. *Id.*, p. 5. Here the issue is whether the note became bearer paper, which necessarily implicates what the note shows.

Millon's arguments against the validity of the endorsement nonetheless lack merit. He admits there are signatures on the note, and, as noted previously, a signature on an instrument is presumed to be authentic and authorized. *See* § 400.3-308(a). The fact the signatures on the stamp are not legible, "original," or accompanied by a power of attorney does not rebut this presumption. In addition, *any* signature on an instrument constitutes an endorsement unless the circumstances "unambiguously indicate" otherwise. § 400.3-204(a). (The most common indication of contrary intent is a signature on the lower right-hand corner of an instrument, which indicates that of an issuer. *See id.*, comment 1.) Millon points to no circumstances even tending to suggest the signatures here do not constitute an authentic and authorized blank endorsement.

No genuine issue exists that the note is bearer paper and Deutsche Bank is in possession of it. Deutsche Bank is thus the holder of the note and entitled to enforce the deed of trust. *See Washington*, 2011 WL 6010247, at *5. Millon's argument that ownership or holder status of the note cannot be traced through the record of securitization documents is irrelevant.

*(c) Chase*

Defendants contend Chase is or was the servicer of Millon's loan. Millon admits he acknowledged Chase was the servicer when he executed the Loan Modification Agreement in 2009, between himself and Deutsche Bank. Millon does not now disavow that acknowledgment or contend Chase never was the servicer of the loan. Nor does Millon argue Chase is not now the servicer. (Millon does argue Chase is not a holder of the note and is a "stranger" to agreements concerning the securitization of the note and the chain of title.)

There appears to be no dispute to resolve here. The undisputed evidence

establishes Chase is *not* the holder of the note; Deutsche Bank is.  Chase is (or was) the servicer and has (or had) whatever rights existing under its servicing agreement.  Chase is entitled to summary judgment.

*(d) Martin, Leigh, Laws & Fritzlen*

The parties dispute whether Deutsche Bank was authorized to appoint Martin, Leigh, Laws & Fritzlen as Successor Trustee on December 31, 2008.  As proof that Deutsche Bank did have that authority, Defendants point to an "Assignment of Deed of Trust" filed in the recorder's office by Chase on July 22, 2010.

In that document Chase acknowledges its interest in the deed of trust was assigned to Deutsche Bank "on a date prior to December 8, 2008."  But Chase goes on to convey the deed of trust *again* to Deutsche Bank.  Chase states this is "consistent with and to confirm said transfer."

Not only is the acknowledgment Assignment of Deed of Trust not a sufficient basis to establish the purported assignment from Chase to Deutsche Bank in 2008, but the reassignment (in 2010) suggests there was something wrong with the purported first assignment.  Merely being assigned the deed of trust (not the note) moreover would not have given Deutsche Bank the power to appoint a Successor Trustee; the governing document (the deed of trust) entitled only the *Lender* to appoint a Successor Trustee.

Missouri law admittedly requires strict compliance with the deed of trust in appointing a new trustee.  *See Ayers v. Myers*, 939 S.W.2d 447, 449 (Mo. Ct. App. 1996).  But it would be a waste of judicial resources to hold a bench trial on Deutsche Bank's holder status in 2008.  If the Court found Deutsche Bank was *not* a holder at that time, Deutsche Bank could just turn around and appoint the law firm as Successor Trustee now.  The key in this declaratory judgment action is the relationship of the parties moving forward.

Although Missouri's statute codifying the doctrine of after-acquired title applies only to conveyances of indefeasible estates in fee simple, *see* § 442.430, the Court finds the doctrine instructive here.  Deutsche Bank intended to appoint Martin, Leigh,

8

Laws & Fritzlen as the Successor Trustee to hold the foreclosure sale regarding Millon's property, and Deutsche Bank has been established to be the current holder of the note. The Court declares that Martin, Leigh, Laws & Fritzlen has the authority to act as Successor Trustee under the deed of trust.

### (e) Lack of Notice of Default

Millon next contends he never received the notice of default called for under the deed of trust. This contention is frivolous.

The deed of trust states the "Lender" will send the notices. From July 17, 2006 (just five months after Millon executed the promissory note), to December 3, 2009, Millon received at his residential address no fewer than *19* notices of default. These notices were from Chase and another bank, Washington Mutual. As previously noted, Millon acknowledged Chase was the servicer of his loan when he executed the Loan Modification Agreement in 2009. In that Agreement Millon also acknowledged that in 2008 Chase had "acquired loans and certain other assets of Washington Mutual Bank from the Federal Deposit Insurance Corporation acting as receiver."

Millon is not claiming the notices confused or misled him, only that they did not come "from any person or entity identified as a '"Lender."' This is trivial.

### (f) Allegedly Misdescribed Property

Millon lastly contends the legal description of the property is inaccurate and must be corrected before a sale can take place. Defendants argue summary judgment should be granted to them because the description meets the standard articulated in *Hamburg Realty Co. v. Woods*, 327 S.W.2d 138, 150 (Mo. 1959). *Hamburg Realty* noted that generally "any description in a deed is sufficient if it affords the means of identification of the property" (citation omitted).

Millon does not dispute the *Hamburg Realty* standard. Nor does he acknowledge or make any argument opposing Defendants' contention that the legal description

9

satisfies it.  Millon simply reasserts that the legal description should be corrected before a sale occurs.

"It is not the court's responsibility to research the law and construct the parties' arguments for them."  *Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) (citations omitted).  And in the Eighth Circuit "failure to oppose a basis for summary judgment constitutes waiver of that argument."  *Satcher v. University of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009). Millon has thus waived any argument Defendants are not entitled to summary judgment with respect to the alleged misdescription of his property.  The legal description of the property—if it is erroneous as Millon contends—does not need to be corrected before the foreclosure sale can occur.

## III.  CONCLUSION

Defendants' motion for summary judgment is granted.
IT IS SO ORDERED.

<table>
<tr><td></td><td>/s/ Ortrie D. Smith</td></tr>
<tr><td></td><td>ORTRIE D. SMITH, SENIOR JUDGE</td></tr>
<tr><td>DATE: May 21, 2012</td><td>UNITED STATES DISTRICT COURT</td></tr>
</table>

10